GOODYKOONTZ, PLAINTIFF IN ERROR, v. ACKER, DEFENDANT IN ERROR.

1. CONSTITUTIONAL LAW—APPROPRIATIONS.
An appropriation is in every instance a prerequisite to the payment of money out of the state treasury.

2. SAME.
An act providing that "the inspector of metalliferous mines shall receive a salary of $3,500 per year, and ten cents per mile for mileage actually traveled, to be paid * * * out of any money appropriated for that purpose," does not constitute an appropriation.

3. SAME.
Although no set form of words is necessary to constitute an appropriation,—it being sufficient if the legislative intent to appropriate clearly appears,—the courts invariably refuse to infer an intention to appropriate from doubtful or ambiguous language.

4. RECITALS OF STATUTES NOT CONCLUSIVE.
It is well settled that a recital of fact or law in a public act is not con-

clusive upon the courts, and such recitals if found in a mere preamble are of still less weight.

*Error to the District Court of Arapahoe County.*

MANDAMUS proceedings against the auditor of state to compel the issuance of warrants for the salary of the inspector of metalliferous mines. Judgment in the district court for petitioner.

The state constitution provides that there shall be established and maintained, the office of Commissioner of Mines. The legislature has, however, never created an office by this title, but by an act passed in 1883, and still in force, it did create the office of Inspector of Coal Mines, and by a subsequent act passed in the year 1889, it created the additional office of Inspector of Metalliferous Mines, and provided for an inspector to be appointed by the governor, by and with the advice and consent of the senate, who should hold his office for two years, or until his successor shall be appointed and qualified. See Session Laws of 1889, p. 254.

This act also provides in section 13 that, " The inspector of metalliferous mines shall receive a salary of three thousand five hundred (3,500) dollars per year, and ten cents per mile for mileage actually and necessarily traveled in the discharge of his official duties, said mileage not to exceed one thousand (1,000) dollars in any one year, to be paid monthly by the state treasurer out of any moneys appropriated *for that purpose,* on the certificate of said state inspector of metalliferous mines, showing services rendered and the amount thereof; and on presentation of such certificate to the state auditor by the person entitled thereto, he shall issue his warrant for the amount thereof, to be paid out of any *appropriation as aforesaid.*" * * *

It is admitted by the pleadings that the defendant in error was duly appointed inspector of metalliferous mines, his commission bearing date April 20, 1893, and at once accepted and entered upon the discharge of the duties of the office, and has ever since continued to and still does discharge the duties thereof.

On the 2d day of November, 1893, the inspector having performed the duties of his office for the preceding months of August, September and October, presented vouchers for his salary, in due form, to plaintiff in error, the state auditor, and requested the issuance to him of warrants on the state treasurer for the salary. The auditor of state declined and refused to issue such warrants, upon the ground that no appropriation had been made for the payment of any salary to the inspector, whereupon the inspector presented his petition to the district court of Arapahoe county, praying for a writ of *mandamus* to compel plaintiff in error to issue warrants upon the state treasurer in payment of the salary as aforesaid.

The auditor by way of answer thereto pleaded that no appropriation had been made by the ninth general assembly for the salary of the inspector of metalliferous mines, and also that there was no state fund out of which said salary could be legally paid. As the result of a hearing upon these pleadings the district court ordered a peremptory writ of *mandamus* to issue against plaintiff in error commanding him to issue warrants as prayed for in the petition. To this judgment the plaintiff in error duly excepted and brings the case here upon error.

Mr. EUGENE ENGLEY, attorney general, and Mr. H. T. SALE, for plaintiff in error.

Mr. W. D. WRIGHT, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Was the defendant in error entitled to the peremptory writ of *mandamus?*

It is admitted that no appropriation was made by the ninth general assembly of the state of Colorado for the payment of any salary to the inspector of metalliferous mines for the year 1893, and also that there is no state fund out of which such salary can be paid.

Section 33 of art. 5 of the constitution provides that, " no money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof."

Among the statutes passed in furtherance of this constitutional provision, are the following :— " In all cases of accounts audited and allowed against the state, and in all cases of grants, salaries, pay and expenses, allowed by law, the auditor shall draw a warrant on the treasurer for the amount due, in the form required by law ; *Provided, An appropriation has been previously made for such purpose."* Sec. 1826, Mills' Ann. Stat. " No warrant shall be drawn by the auditor, or paid by the treasurer, unless the money has been previously appropriated by law ; nor shall the whole amount drawn for or paid under one head ever exceed the amount appropriated by law for that purpose." Sec. 1827, Mills' Ann. Stat.

The primary object of the foregoing provision of the constitution and of the statutes passed in aid thereof is to prevent the expenditure of the money of the people without their consent, expressed in the organic law or by constitutional acts of their legislature. An appropriation is made a prerequisite to payment in every instance. *The Institute v. Henderson*, 18 Colo. 98.

Is there an appropriation out of which the salary of defendant in error should be paid? The argument in support of the affirmative is in substance as follows : No set form of words is necessary to constitute an appropriation; it is sufficient if the legislative intent to appropriate money for a specific purpose clearly appears from the statute, and when the salary of a public officer is fixed by law, together with the time and method of payment, this constitutes an appropriation within the terms of our constitution and statutes.

Although the decisions are not uniform it must be admitted that the trend of the more recent cases is in support of this argument. *Carr v. State*, 22 Am. St. Reports, 624, and notes ; *State v. The Auditor*, (Wy.) 33 Pac. Rep. 125 ; *In re Continuing Appropriations*, 18 Colo. 192. Whether the pecu-

liar provisions of our constitution with reference to general appropriation bills should be held as rendering inapplicable the reasoning upon which the foregoing decisions are based when applied to the expenses of the legislative, executive or judicial departments of this state, we are not called upon to determine, in view of the conclusion at which we have arrived in regard to the statute relied upon to establish an appropriation in this case. In answer to a legislative question this court, in the case last above cited, expressed the opinion that the statutes then under consideration were sufficient to warrant the disbursement of certain special funds when collected, but the opinion is not to be taken as upholding the right of the auditor of state to draw warrants in anticipation of the collection of taxes levied for any year in advance of the years usually covered by the biennial appropriations.

The statute providing for the inspector's salary is peculiar. It differs from the provisions usually employed with reference to the compensation of state officers. It reads as follows: "The inspector of metalliferous mines shall receive a salary of three thousand five hundred dollars per year, and ten cents per mile for mileage actually and necessarily traveled in the discharge of his official duties, said mileage not to exceed one thousand dollars in any one year, to be paid monthly by the state treasurer out of any moneys appropriated for that purpose, on the certificate of said state inspector of metalliferous mines, showing services rendered and the amount thereof; * * *." The essential difference between this and the provisions of nearly every other statute fixing the salary of public officers arises from the addition in this statute of the words "out of any moneys appropriated for that purpose." There is but one apparent purpose of this innovation, which is that for reasons satisfactory to the legislature that body was of the opinion that the payment of the salary and expenses of this officer should be dependent upon further legislation.

Were it necessary to advance reasons that might have had weight in the legislative mind, it would not be difficult to

do so. This field of legislation being new the provisions of this bill were largely experimental, and it was but natural that the legislature should for this reason delay the appropriation necessary to carry the same into effect. This act not only provides for the creation of the office of mining inspector, designating the amount of his salary and the rate of mileage to be allowed, but also provides for the appointment of three assistants, each to be allowed a fixed salary in addition to mileage, and it was but natural that provision for all these outlays should be deferred, to be considered in connection with the general appropriation bill, as was afterwards done at that session.

But whether these or other reasons operated to produce the result, we must construe the act as written. Although no set form of words is necessary to constitute an appropriation, it being sufficient if the legislative intent to appropriate clearly appears, on the other hand the courts invariably refuse to infer an intention to appropriate from doubtful or ambiguous language. *In re Continuing Appropriations, supra.*

In the act before us there is not only an absence of language that may be considered either doubtful or ambiguous in favor of the appropriation claimed, but the legislative intent that the act should not of itself constitute an appropriation is clearly manifest.

The judgment of the district court is accordingly reversed and cause remanded.

*Reversed.*

Opinion upon petition for rehearing.

PER CURIAM. Upon the petition for rehearing in this case our attention is for the first called to an act of the ninth general assembly, entitled " An act for the relief of James Hutchinson formerly inspector of metalliferous mines and for D. L. McCarthy, John Truan and George Kislingbury formerly assistant inspectors of metalliferous mines and making an appropriation therefor." Session Laws of 1893, p. 42.

In the preamble to this act the statute under consideration in

this case is referred to by way of recital as follows : " Whereas, an appropriation for the salary and expenses of officers was made in said act, approved April 1, 1889." It is now urged that the foregoing statement is conclusive upon the question that the prior act referred to constituted an appropriation within the intent and meaning of the constitution.

Such is not the law. The recital is in the preamble of a private statute for the relief of certain individuals named therein, and it is well settled that recitals even in the body of such an act bind no one but those who applied for it. Moreover, a mere recital of fact or law in a public act is not conclusive upon the courts, while such recitals if found in a mere preamble are of still less weight. *Branson v. Wirth*, 17 Wallace, 32 ; *The State v. Beard et al.*, 1 Carter (Ind.) 460 ; *Elmondorff v. Carmichael*, 3 Lit. (Ky.) 473.

The rules of construction invoked by counsel are mere aids to be relied upon only when the language of an act is doubtful or ambiguous. The wording of the statute of 1889 leaves no room for construction. No conclusion can be reached other than the one arrived at in the previous opinion of this court, if all the words of the statute are given effect. No appropriation can be deduced from the language of the act unless the qualifying phrases, " out of any moneys appropriated for that purpose " and " to be paid out of any appropriation as aforesaid," be held to be meaningless. The language is plain and admits of but one meaning, and the task of interpretation can hardly be said to arise. To give this act the construction contended for would not be to interpret the law, but for this court to make it.

The Constitution of Colorado contains numerous restrictions upon the power of the legislature to make appropriations. These wise and beneficent provisions have in many instances had but slight weight with the legislative department of the government. Appropriations in excess of the constitutional limits have been so frequently made as to cease to create surprise. Such acts embarrass the disbursing officers of the state and crowd the dockets of the courts with

cases brought for the purpose of determining the priority of different appropriations, or the validity of warrants issued in obedience thereto.

We are now asked to add to this embarrassment and confusion by construing an appropriation out of an act, contrary to its express terms. The act by its peculiar phraseology gives evidence of a caution which is to be encouraged as an indication of more conservative legislation, and this court would be derelict in its duty if it failed to give effect to the legislative intent which is clearly apparent from the language of the act.

The petition for rehearing will be denied.

*Rehearing denied.*